## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **CREOLE DESIGN, LLC,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| | § | **CIVIL ACTION No. _____** |
| **SMITH FAMILY HOMES, LLC,** | § | |
| **BRICKMOON DESIGN, LLC,** | § | |
| **BRADLEY SMITH,** and | § | |
| **JEREMY DEE McFARLAND**, | § | |
| Defendants | § | |

### PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF

Plaintiff Creole Designs, LLC, files its Original Complaint against defendants Smith Family Homes, LLC, Brickmoon Design, LLC, Bradley Smith, and Jeremy Dee McFarland, and for cause of action would respectfully show to the Court the following:

### I. NATURE OF THE CASE

1.    Plaintiff sues pursuant to the Architectural Works Copyright Protection Act, and seeks injunctive relief and damages for claims arising from defendants' unauthorized copying and commercial use of plaintiff's copyrighted works.  Defendants have infringed on plaintiff's copyright by making copies of and creating structures from plaintiff's architectural drawings and designs.

## II. PARTIES

2.      Plaintiff is a Texas limited liability company with its principal place of business in Harris County, Texas.

3.      Defendant Smith Family Homes, LLC, ("SFH") is a Texas limited liability company with its principal place of business in Harris County, Texas. SFH may be served process by serving its registered agent, Bradley Smith, at 1119 Bayland, Houston, Texas 77009.

4.      Defendant Brickmoon Design, LLC, ("Brickmoon") is a Texas limited liability company with its principal place of business in Montgomery County, Texas.  Defendant may be served by serving its registered agent, Jeremy McFarland, at 28514 Rustic Pines Ct., Spring, Texas 77386.

5.      Defendant Bradley Smith ("Smith") is an individual doing business in Harris County, Texas, who may be served with process by personal delivery at 1119 Bayland, Houston, Texas 77009, or at 1033 Harvard, Houston, Texas 77008, or wherever he may be found.

6.      Defendant Jeremy McFarland ("McFarland") is an individual doing business in Harris County, Texas, and may be served at 28514 Rustic Pines Ct., Spring, Texas 77386, or wherever he may be found.

## III. JURISDICTION

7.       This Court has subject matter jurisdiction over Count I of this case pursuant to 28 U.S.C. § 1338 because this action arises under federal copyright

laws, 17 U.S.C. § 101, *et seq*. The Court has supplemental jurisdiction over Counts II and III of this case pursuant to 28 U.S.C. § 1367.

## IV. VENUE

8.      Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1400 because defendants are subject to personal jurisdiction in this District, and because defendants committed acts of copyright infringement in this District. In addition, venue is proper in this District pursuant 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to plaintiff's claims and causes of action occurred in Harris County, Texas, and because plaintiff and defendants reside or are located in this District.

## V. FACTS

9.      Plaintiff is a commercial and residential building and home designer. All of plaintiff's building and home designs are original works designed by plaintiff. In September 2014, Smith and SFH executed a House Design Proposal agreement, whereby plaintiff agreed to provide various home design plans to SFH for the construction of seven houses at 522 E. 27th Street, Houston, Texas (the "Proposal"). Exhibit A. Under the Proposal, plaintiff retained sole ownership of all home design plans for 522 E. 27th Street, and SFH's use of the home design plans was expressly limited to a one-time use at the location designated in the Proposal. Exhibit A.  Plaintiff provided the home design plans pursuant to the terms of the Proposal and billed SFH by invoice dated October 8, 2014, which SFH paid in full on or about May 1, 2015. Exhibit B.

10.     In April 2015, at the request of SFH, plaintiff agreed to sell SFH the limited right to reuse one of plaintiff's home design plans from the Proposal for the construction of two additional houses at 440 W. 17th Street, Houston, Texas (the "Copyrighted Work"). Exhibit C. At no point did plaintiff give SFH an unlimited license to use the Copyrighted Work. Plaintiff provided the Copyrighted Work as agreed, and billed SFH by invoice dated April 15, 2015, which SFH paid in full on or about May 26, 2015. Exhibit D.

11.     On October 15, 2015, several months *after* plaintiff completed its work on the Copyrighted Work, SFH requested that plaintiff make changes to the Copyrighted Work.  Exhibit E. Plaintiff declined to make any additional changes because it had already completed its work on the Copyrighted Work and the requested changes reflected superficial decorative elements that did not need to be included on the home design plans. Exhibit E. SFH also asked plaintiff, in the alternative, to release its Computer Aided Design file ("CAD file") for the Copyrighted Work, in order to allow another designer or architect to make changes to the Copyrighted Work. Exhibit E. Plaintiff declined to release the CAD file for its Copyrighted Work to any other designer or architect, and informed SFH that copyright law protected plaintiff's Copyrighted Work. More to the point, plaintiff clearly and unequivocally stated SF Homes did not have plaintiff's permission to copy any of plaintiff's work, and copyright law prohibited any unauthorized duplication of plaintiff's work.  Exhibit E.

12.     On information and belief, SFH sold the property at 440 W. 17th Street, along with copies of the Copyrighted Work, to Miller/Keaton Homes in or around October 2015.

13.     After plaintiff refused to release the CAD file for the Copyrighted Work to SFH, plaintiff learned that SFH was constructing two additional homes at 447 W. 17th Street directly across the street from 440 W. 17th Street—and that the homes at 447 W. 17th Street appeared to be identical to plaintiff's Copyrighted Work.  Since plaintiff did not license additional uses of its Copyrighted Work to SFH, plaintiff reviewed the plans for 447 W. 17th Street on file with the Houston Permitting Center in order to determine whether plaintiff's Copyrighted Work was being used without plaintiff's permission. Plaintiff examined the Houston Permitting Center files for 447 W. 17th Street and discovered Smith and SFH, with the help of Brickmoon and McFarland, had copied plaintiff's Copyrighted Work. Indeed, the plans on file with the Houston Permitting Center for 447 W. 17th Street, project numbers 15117667 and 15117669 for lots A and B respectively, were identical to plaintiff's Copyrighted Work. Construction of the 447 W. 17th Street Homes is substantially complete, and the homes are currently listed for sale. The sale status of at least one of the homes is identified as, "Sale Pending." Exhibit F.

14.     More recently, in July 2016, plaintiff learned that SFH had applied for permitting to construct two additional houses located at 444 W. 17th Street, project numbers 16059625 and 16059626, for lots A and B respectively. Again,

plaintiff checked the plans on file with the Houston Permitting Center, this time for 444 W. 17th Street. The plans SFH submitted for permitting at 444 W. 17th Street were identical to the infringing plans SFH used to construct the homes at 447 W. 17th Street—clearly copied from plaintiff's Copyrighted Work (collectively, the "Infringing Plans").

15.    Plaintiff applied for and received its copyright registration for its Copyrighted Work under United States Copyright Office Registration Number VAu 1-248-025. Exhibit G.  Plaintiff's original copyright application was filed on October 1, 2015, designating plaintiff's managing member and designer, Sam Gianukos, as the owner of the Copyrighted Work. At the instruction of the Copyright Office, plaintiff refiled its copyright application on June 24, 2016, to clarify that Creole Design, LLC, and not its managing member and designer, was the owner of the Copyrighted Work. The Copyright Office issued the copyright registration for the Copyrighted Work within *a week* of receiving the refiled application.

### VI. COUNT I – VIOLATION OF COPYRIGHT ACT

16.    Plaintiff complains of and here asserts causes of action against defendants SFH, Brickmoon, Smith, and McFarland for copyright infringement.

17.    Plaintiff is the owner and holder of a valid copyright for the Copyrighted Work. Exhibit G. Each defendant, acting individually or concert, has engaged in one or more acts of copyright infringement under 17 U.S.C. § 501(a)

by violating one or more of plaintiff's exclusive rights under 17 U.S.C. § 106 in plaintiff's Copyrighted Work.

18.     Specifically, defendants, acting individually or in concert, have engaged in the unauthorized copying and reproduction of physical and electronic copies of plaintiff's Copyrighted Work in connection with the Infringing Plans and the homes actually constructed or about to be constructed from the Infringing Plans (the "Infringing Homes") in violation 17 U.S.C. § 106(1).

19.     Further, defendants, acting individually or in concert, created the Infringing Plans and have therefore engaged in the unauthorized preparation of derivative works based upon plaintiff's Copyrighted Work in violation of 17 U.S.C. § 106(2).

20.     Further, defendants, acting individually or in concert, purported to transfer ownership of plaintiff's Copyrighted Work and distributed copies of plaintiff's Copyrighted Work to Miller/Keaton Homes in violation of 17 U.S.C. § 106(3).

21.     Defendants have infringed and are infringing on plaintiff's Copyrighted Work by, at minimum, copying the Copyrighted Work, creating structures and associated design and construction drawings from the Copyrighted Work, creating derivative works based on the Copyrighted Work, and transferring ownership of and selling copies of plaintiff's Copyrighted Work. Accordingly, plaintiff is entitled to, and here sues for, (i) actual damages, including all of plaintiff's lost profits; (ii) defendants' profits and future profits attributable to or

7

derived from defendants' use of the Infringing Plans; or (iii) in the alternative, an award of the maximum statutory damages under 17 U.S.C. § 504(c) for all defendants' infringements of the Copyrighted Work. In addition, plaintiff is entitled to, and here sues for, recovery of plaintiff's costs and reasonable attorney's fees incurred in prosecuting this action.

22.     In addition to the foregoing, plaintiff is entitled to and here sues for injunctive relief to prevent the transfer or distribution of any proceeds, fees, rents, profits, or other payments derived from Defendants' use or disposition of the Infringing Plans. Plaintiff is also entitled to, and here sues for, preliminary and permanent injunctions pursuant to 17 U.S.C. § 502, prohibiting Defendants from further infringing on plaintiff's Copyrighted Work, including but not limited to defendants' further use of the Infringing Plans, further distribution or publication of the Infringing Plans, and further preparation or creation of derivative works based on the Infringing Plans.

### VII. COUNT II – BREACH OF CONTRACT

23.     Smith and SFH entered into a contract with plaintiff to purchase a limited one-time right to use the Copyrighted Work in connection with the construction project located at 440 W 17th Street. SFH breached its contract with plaintiff by, among other things, copying and reusing the Copyrighted Work in connection with other projects in violation of the parties' agreement and plaintiff's copyright in the Copyrighted Work.

24.     Accordingly, Smith and SFH are in breach of the parties' contract and liable to plaintiff for actual damages in an amount equal to plaintiff's licensing fee for each unauthorized use of the Copyrighted Work, totaling $6,000.00. Further, plaintiff is entitled to and here sues for recovery of its costs and reasonable attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001.

## VIII. COUNT III – CIVIL CONSPIRACY

25.     Defendants engaged in a civil conspiracy to infringe on plaintiff's copyright in the Copyrighted Work.  Specifically, defendants, in combination with one another, agreed to copy the Copyrighted Work, to create and publish derivative works based on the Copyrighted Work, and to create structures and associated design and construction drawings from the Copyrighted Work in violation of plaintiff's copyright in the Copyrighted Work.

26.     Defendants acted with the intent to harm plaintiff, and in order to accomplish the object of their agreement defendants actually copied the Copyrighted Work, created and published derivative works based on the Copyrighted Work, and created structures and associated design and construction drawings from the Copyrighted Work in violation of plaintiff's copyright. Defendants' agreement to coordinate and carryout the above described overt actions resulted in multiple infringements of plaintiff's copyright in the Copyrighted Work and proximately caused injuries to plaintiff.

## IX. APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

27.     Defendants have infringed and are infringing on plaintiff's Copyrighted Work. Plaintiff sues for, and is entitled to, pursuant to 17 U.S.C § 504, a disgorgement of all profits attributable to defendants' infringement of plaintiff's Copyrighted Work.

28.     Two or more of the Infringing Homes constructed from the Infringing Plans are currently listed for sale, and at least one Infringing Home is currently identified as, "Sale Pending." Exhibit F. Accordingly, plaintiff seeks an *ex parte* temporary restraining order and preliminary injunction prohibiting the distribution and/or transfer of any profits derived from the construction and/or sale of the Infringing Homes and Infringing Plans. Plaintiff further requests this Court to order any such profits be deposited into the registry of the Court during the pendency of this litigation in order to protect plaintiff's interest in and right to any such profits.

29.     To obtain injunctive relief plaintiff must plead and prove four specific elements:

  (i)     A substantial likelihood that plaintiff will succeed on the merits of its case;

  (ii)    Irreparable injury;

  (iii)   The balance of hardships weighs in favor injunctive relief; and

  (iv)    Injunctive relief will not disserve public policy or the public interest.

10

*See, e.g., Winter v. National Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *S. Co. v. Dauben Inc.*, 324 Fed. Appx. 309, 314 (5th Cir. 2009).

**A. There is a substantial likelihood Plaintiff will prevail on its claims for copyright infringement.**

30.     In assessing the likelihood of a plaintiff's success on the merits the court should look to the standards provided by the substantive law and determine whether plaintiff has presented a prima facie case. *Janvey v. Alguire*, 647 F.3d 585, 595-96 (5th Cir. 2011) (citing, *Roho, Inc. v. Marquis,* 902 F.2d 356, 358 (5th Cir.1990)). "To satisfy the first element of likelihood of success on the merits, the [plaintiff's] evidence in the preliminary injunction proceeding is not required to prove [its] entitlement to summary judgment." *Id.* (quoting, *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009)) (internal quotation marks omitted).

31.     The owner and holder of a copyright in an architectural work has the exclusive right to utilize, transfer, and reproduce the work. 17 U.S.C. § 106. Plaintiff can show it is the owner and holder of a valid copyright. Defendants infringed on plaintiff's copyright by, among other things, making unauthorized copies of and constructing homes from plaintiff's Copyrighted Work. Accordingly, plaintiff is likely to succeed on its action against defendants for copyright infringement.

32.     In order for plaintiff to prevail on the merits of its copyright infringement claim plaintiff must establish, (i) ownership of a valid copyright; and

(ii) copying of constituent elements of the work that are copyrightable.  *See, e.g., Engineering Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1340 (5th Cir.1994) *supplemented,* 46 F.3d 408 (5th Cir.1995).

  i.  <u>Plaintiff owns a valid copyright</u>

  33.  Proving ownership of a valid copyright is typically a two-step process requiring "(a) proof of originality and copyrightability in the work as a whole and (b) compliance with applicable statutory formalities." *Lennar Homes of Texas Sales & Mktg., Ltd. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 921-22 (S.D. Tex. 2015) (citing, *Engineering Dynamics, Inc.*, 26 F.3d 1335, 1340 (5th Cir.1994)) (internal quotations omitted).  However, a certificate of registration of the copyright is "prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir.2004).  Plaintiff holds a certificate of registration for its copyright in the Copyrighted Work. Exhibit G. The effect of obtaining a certificate of registration is to shift the burden of proof to defendants to disprove the validity of plaintiff's copyright. *See Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. H–08–3181, 2010 WL 4366990, at *24 (S.D.Tex. Oct. 27, 2010).  Accordingly, plaintiff meets its burden of establishing the first element necessary to succeed on its copyright infringement action against defendants.

  ii.  <u>Defendants copied plaintiff's copyrighted work</u>

  34.  To prove defendants' conduct constitutes actionable copying of plaintiff's copyrighted works plaintiff must show (a) factual copying of plaintiff's

work—Defendants used plaintiff's copyrighted material to create the Infringing Plans; and (b) there is a *substantial similarity* between plaintiff's copyrighted works and the infringing works. *See General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).

a.  Factual copying

35.     A plaintiff establishes factual copying by providing evidence that (1) defendants had access to plaintiff's Copyrighted Work before defendants created the Infringing Plans, and (2) by the probative similarity between the two works. *Id*. "The access element is satisfied if the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work. The second element—probative similarity—requires a showing that the works, when compared as a whole, are adequately similar to establish appropriation." *Id*. For purposes of establishing "probative similarity," comparing the works "as a whole" requires the fact finder to look at all aspects of the works—including aspects which may not be copyrightable—to determine whether there are similarities between the works' constituent parts. *Lennar Homes*, 117 F. Supp. 3d at 932.

36.     In the instant case Defendants clearly had access to plaintiff's Copyrighted Work because SF Homes had purchased the limited right to use the Copyrighted Work for SF Homes' project at 440 W. 17th Street. Thus, defendants had access to plaintiff's Copyrighted Work before defendants' generated the Infringing Plans and submitted them to Houston Permitting Center for permitting. As discussed above, defendants' Infringing Plans are identical to the Copyrighted

*Creole Design, LLC v. Smith Family Homes, LLC*
Plaintiff's Original Complaint

Work, and are more than "adequately similar to establish appropriation." *Gen. Universal*, 379 F.3d 131.

b. <u>Substantial similarity</u>

37.    To determine whether an allegedly infringing work is "substantially similar" to a copyrighted work "a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 550 (5th Cir. 2015) (citing, *Creations Unlimited, Inc. v. McCain,* 112 F.3d 814, 816 (5th Cir. 1997)). Unlike determinations of "probative similarity," when looking to determine "substantial similarity," the fact finder is directed to consider only the protectable elements of the copyrighted work, and to look for a "substantial similarity of ideas and expression." *Gen. Universal,* 379 F.3d at 142.

38.    In the instant case, the general layout, floor plans, dimensions, and spatial expressions of plaintiff's Copyrighted Work and Defendants' Infringing Plans are identical. Because there are no any differences between the Copyrighted Work and defendants' Infringing plans, there is a substantial likelihood that even after factoring out any design elements that are not copyrightable a jury will likely determine there is a "substantial similarity" between the plans. *See, e.g., Peel & Co., Inc. v. The Rug Market,* 238 F.3d 391 (5th Cir. 2001).

39.    Plaintiff has alleged a prima facie case for its copyright infringement claims and there is a substantial probability plaintiff will prevail on the merits of

its copyright infringement action. Accordingly, plaintiff satisfies the first element necessary to obtain injunctive relief.

**B. If Defendants are permitted to distribute or transfer away profits derived from the Infringing Plans, Plaintiff will suffer irreparable injury.**

40.     Plaintiff will suffer irreparable injury if defendants are not enjoined from transferring or distributing profits derived from defendants' use of the Infringing Plans. An injury is irreparable if the injured party would be unable to collect on a money judgment absent equitable relief. *See, e.g., Pipkin v. JVM Operating, L.C.*, 197 B.R. 47, 56 (E.D. Tex. 1996) (citing, *Winston v. General Drivers Local 89,* 879 F.Supp. 719, 725 (W.D.Ky.1995) ("A theoretical right to recover money damages will not constitute an adequate legal remedy where difficulties in the collection of any judgment render that remedy illusory."); *Collins v. Aggreko, Inc.,* 884 F.Supp. 450, 452 (D.Utah 1995) ("Irreparable harm could result if defendants will be unable to pay damages."); *see also Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 473 (5th Cir.1985) ("The absence of an available remedy by which the movant can later recover money damages, however, may also be sufficient to show irreparable injury."); *Chemlawn Services Corp. v. GNC Pumps, Inc.,* 690 F.Supp. 1560, 1569 (S.D.Tex.), *aff'd,* 856 F.2d 202 (5th Cir. 1988)).

41.    A preliminary injunction is "designed to freeze the status quo by preserving particular and discrete assets which are in dispute…." *Pipkin,* 197 B.R. at 56.  "[W]here a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (citing, *Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.,* 621 F.2d 683, 686–87 (5th Cir. 1980) ("[E]ven were [plaintiff's] remedy limited to damages, an injunction may issue to protect that remedy."))

42.    If defendants are not enjoined, plaintiff's injury will be irreparable because defendants will likely become judgment proof and/or insolvent. *See Tel. Equip. Network v. Ta/Westchase Place*, 80 S.W.3d 601, 610 (Tex. App. Houston 1st Dist. 2002, no pet.)  (concluding that plaintiff "demonstrated irreparable injury and no adequate remedy at law" where debtor would "become insolvent, judgment-proof, and as stated by the trial court, an empty shell." (internal quotation marks omitted)).

43.    On information and belief, defendants are highly leveraged and financially committed in several construction projects in addition to the Infringing Homes. If the requested injunctive relief is not granted, defendants' profits attributable to the Infringing Homes will be distributed or transferred to fund and satisfy obligations related to defendants' other projects, and plaintiff will be

*Creole Design, LLC v. Smith Family Homes, LLC*
Plaintiff's Original Complaint

unable to recover damages from defendants. Two of the Infringing Homes are currently listed for sale at $879,000.00 each. Builders typically net 20%-25% profit on the sale of newly constructed homes in this area. Figuring conservatively, defendants are likely to make approximately $175,800.00 in profit on each Infringing Home.

44.     Under 17 U.S.C. § 504 plaintiff is entitled to recover profits attributable to defendants infringements on plaintiff's Copyrighted Work. A temporary restraining order and preliminary injunction enjoining defendants from transferring and/or distributing profits derived from the sale of the Infringing Homes will preserve the status quo and ensure an adequate remedy is available to plaintiff at the resolution of this litigation. Accordingly, plaintiff satisfies the second element necessary to obtain injunctive relief.

### C. The balance of hardships weighs in favor of granting Plaintiff injunctive relief.

45.     The potential injury plaintiff faces if injunctive relief is not granted outweighs any injury Defendants might sustain as a result of the injunctive relief. When considering the balance of equities "the court evaluates the severity of the impact on [defendants] if the preliminary injunction is granted and the hardship that would occur to [plaintiff] if the injunction is denied." *Texas First Nat. Bank v. Wu*, 347 F. Supp. 2d 389, 399 (S.D. Tex. 2004) (citing, *DSC Communications Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). "In balancing the interests of the parties, courts consider the competing claims of injury and balance

the hardships on each party of either granting or withholding the requested relief."
*Id*. (citing, *Pappan Enters. v. Hardees*, 143 F.3d 800, 805 (3d Cir.1998)).

46.     Plaintiff seeks injunctive relief to ensure plaintiff will actually be able to recover on a judgment against defendants. As discussed above, at least two Infringing Homes—homes created from the Infringing Plans—are already listed for sale on the market. The Infringing Homes could sell at any time. It is likely some or all of the Infringing Homes will sell before this litigation is resolved. If injunctive relief is not granted and defendants are permitted to distribute and/or transfer profits derived from sales of the Infringing Homes, there will not be any funds left to satisfy an award of damages on plaintiff's copyright infringement action. *See Pipkin*, 197 B.R. at 56.

47.     Conversely, defendants will not be injured if enjoined from distributing or transferring profits derived from the sale of Infringing Homes and their use of the Infringing Plans. Should plaintiff prevail on its claims, defendants would not be entitled to profits attributable to their infringement on plaintiff's copyright. In the event this Court rules in favor of defendants, such profits will be preserved and available to defendants at that time.

48.     Plaintiff satisfies the third element necessary to obtain injunctive relief because failing to grant the requested relief will likely result in plaintiff being deprived of a meaningful remedy in its action for copyright infringement. Granting the requested relief will not harm defendants.

18

**D. An injunction restraining Defendants' transfer of profits derived from use of the Infringing Plans is not against public policy.**

49.    It is in the public interest to protect intellectual property owners by preserving their ability to recover damages for copyright infringement. *See, e.g., Designer Techs., Inc. v. Killett*, 3:12-CV-5277-L, 2014 WL 25518, at *3 (N.D. Tex. Jan. 2, 2014) ("The public has an interest in knowing or being assured that persons do not violate laws regarding trademarks, copyrights, and fair competition."). When considering the final element of an application for injunctive relief "the Court weighs the public's interest in preserving intellectual property rights…." *See Senderra RX Partners, LLC v. Spud Software Co., Inc.*, 3:15-CV-1911-M, 2015 WL 4617179, at *7 (N.D. Tex. Aug. 3, 2015) (citing generally, *generally Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.,* 710 F.3d 579, 585 (5th Cir.2013); *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.,* 878 F.2d 806, 810 n. 1 (5th Cir.1989)). The public interest element of an application for injunctive relief is satisfied where the Court finds that public interest is not disserved by granting the injunction. *Id*.

50.    Plaintiff seeks the injunctive relief requested herein solely for the purpose of preserving the status quo and preserving plaintiff's ability to recover actual damages and profits from defendants under 17 U.S.C. § 504. Enjoining defendants from dissipating profits attributable to their copyright infringement—while plaintiff's action for copyright infringement is pending—does not disserve

the public interest. Accordingly, plaintiff satisfies the fourth and final element it must establish to obtain injunctive relief.

51.     Plaintiff respectfully requests this Court issue an ex parte temporary restraining order (1) enjoining defendants from distributing or transferring any profits attributable to defendants' infringements of plaintiff's copyright, and (2) requiring that any such profits, rents, fees or other sums attributable to defendants' infringements be deposited into the registry of the Court or otherwise held in escrow during the pendency of this litigation.

52.     The requested injunctive relief may be granted ex parte because there are no less drastic means to protect the plaintiff's interest. Specifically, notice would render plaintiff's claims moot because there is a substantial and immediate risk defendants will conceal or destroy evidence of profits attributable to defendants' infringements on plaintiff's copyright.

53.     Plaintiff is willing to post bond in an amount the Court deems appropriate.

54.     Plaintiff further requests this Court set a hearing to consider plaintiff's request for a preliminary injunction at the earliest possible time.

## X. JURY DEMAND

55.     Plaintiff demands a trial by jury.

*Creole Design, LLC v. Smith Family Homes, LLC*
Plaintiff's Original Complaint

## XI. ATTORNEY'S FEES

56.     Plaintiff is entitled to, and here sues for, it reasonable costs and attorney's fees pursuant to 17 U.S.C. § 505 and TEX. CIV. PRAC. & REM. CODE § 38.001.

## PRAYER FOR RELIEF

Plaintiff respectfully prays the Court to grant all relief prayed for by plaintiff in the Complaint, that judgment be rendered in plaintiff's favor against defendants, and that plaintiff have and recover from defendants' as follows:

a.     Actual damages, including all of plaintiff's lost profits;

b.     Defendants' profits and future profits attributable to or derived from Defendants' use of the Infringing Plans;

c.     Or, in the alternative, an award of the maximum statutory damages for all Defendants' infringements related to the Infringing Plans and Copyrighted Work under 17 U.S.C. §504(c);

d.     Injunctive relief to prevent the transfer or distribution of any proceeds, fees, rents, profits, or other payments attributable to defendants' infringements on plaintiff's Copyrighted Work;

e.     Preliminary and permanent injunctions pursuant to 17 U.S.C. §502, prohibiting Defendants from further infringing on plaintiff's Copyrighted Work, including but not limited to Defendants' further use of the Infringing Plans, further distribution or publication of the Infringing Plans, and further preparation or creation of derivative works based on the Infringing Plans;

f.     Plaintiff's costs and reasonable attorney's fees; and

g.     All such other and further relief, at law or in equity, to which plaintiff may be justly entitled or permitted to recover.

Respectfully submitted,

# HANSZEN ✦ LAPORTE

By: _____/s/ Jeffrey L. Dorrell_____

**JEFFREY L. DORRELL**
Texas Bar No. 00787386
jdorrell@hanszenlaporte.com
**MATTHEW S.C. HANSEL**
State Bar No. 24092480
mhansel@hanszenlaporte.com
11767 Katy Freeway, Suite 850
Houston, Texas 77079
Telephone: 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR PLAINTIFF CREOLE DESIGN, LLC**

**VERIFICATION**

Before me the undersigned notary, on this day personally appeared Sam Gianukos, the affiant, a person whose identity is known to me. After I administered an oath, the affiant testified as follows:

"My name is Sam Gianukos. I am over the age of 18 and capable of making this verification. I have read Plaintiff's Verified Original Petition and Application for Injunctive Relief. The facts stated therein are within my knowledge and are true and correct."

Sam Gianukos, Creole Design, LLC

SWORN TO and SUBSCRIBED before me by Sam Gianukos on July 22, 2016.

NANCY MARTINEZ
Notary Public, State of Texas
My Commission Expires
July 01, 2018

Notary Public in and for the State of Texas

*Creole Design, LLC v. Smith Family Homes, LLC*
Plaintiff's Original Complaint

23